SHANNON LISS-RIORDAN (SBN 310719)
(sliss@llrlaw.com)
ANNE KRAMER (SBN 315131)
(akramer@llrlaw.com)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone:    (617) 994-5800
Facsimile:    (617) 994-5801

*Attorneys for Plaintiff Spencer Verhines,*
*on behalf of himself and all others similarly situated*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SPENCER VERHINES, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC.,<br><br>Defendant | Case No. 320-cv-01886<br><br>**PLAINTIFF'S NOTICE OF AND EMERGENCY MOTION FOR PRELIMINARY INJUNCTION**<br><br>Complaint Filed: March 12, 2020<br>Trial Date: None Set |

**PLAINTIFF'S NOTICE OF AND EMERGENCY MOTION**
**FOR PRELIMINARY INJUNCTION**

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Plaintiff Spencer Verhines will and hereby moves for an emergency preliminary injunction enjoining Defendant Uber Technologies, Inc. from misclassifying Plaintiff and all others similarly situated, namely all other individuals working as Uber drivers in California, as independent contractors and thereby denying these workers their rights under the Labor Code, including state-mandated paid sick leave in violation of Cal. Lab. Code § 246.

Plaintiff seeks this preliminary injunction on an emergency basis due to the global pandemic of COVID-19 (the "coronavirus"). This crisis starkly demonstrates the harm that Uber's misclassification of its drivers is causing, not only to Uber drivers but also to Uber passengers and the general public, as drivers are deprived of an important workplace protection to which they are entitled as employees and which is designed to protect public health. Uber's failure to provide paid sick leave as mandated by state law means Uber drivers will need to work while sick to make ends meet and substantially increases the likelihood Uber drivers will spread illnesses to the general public. Thus, Plaintiff respectfully requests that this Court enjoin Uber from misclassifying its drivers as independent contractors and begin complying with California employee protections and provide state-mandated paid sick leave. Doing so immediately is essential to avoiding imminent harm to Uber drivers, as well as the general public.

i

**PLAINTIFF'S NOTICE OF AND EMERGENCY MOTION
FOR PRELIMINARY INJUNCTION**

**Table of Contents**

I.      INTRODUCTION ............................................................................................. 1

II.     FACTUAL AND PROCEDURAL BACKGROUND ....................................... 8

III.    ARGUMENT .................................................................................................... 8

   A. The Court Should Adjudicate Plaintiff's Emergency Motion for Injunctive
      Relief Forthwith ........................................................................................... 8

   B. The Court Should Grant Plaintiff's Motion for a Preliminary Injunction ................... 12

      1.  Plaintiff Has Not Only Raised a Serious Question on the Merits,
          But is Likely to Prevail on the Merits ............................................. 13

      2.  Uber Drivers, as well as the Public, Will Suffer Irreparable Harm
          Should a Preliminary Injunction Not Issue ..................................... 15

      3.  The Balance of Hardships Tips Sharply in Plaintiff's Favor ......................... 18

      4.  An Injunction is in the Public Interest ............................................. 19

IV.     CONCLUSION ................................................................................................ 19

**PLAINTIFF'S NOTICE OF AND EMERGENCY MOTION
FOR PRELIMINARY INJUNCTION**

**Table of Authorities**

**Cases**

Alliance for the Wild Rockies v. Cottrell
    632 F.3d 1127 (9th Cir. 2011) ............................................. 12

Arizona Dream Act Coalition
    757 F.3d 1053 (9th Cir. 2014) ............................................. 15

Brantley v. Maxwell–Jolly
    656 F.Supp.2d 1161 (N.D. Cal.2009) ............................... 4, 9

Broughton v. Cigna Healthplans of California
    21 Cal. 4th 1066 (1999) ...................................................... 11

Chalk v. U.S. Dist. Court Cent. Dist. of California
    840 F.2d 701 (9th Cir. 1988) .............................................. 18

Chhoeun v. Marin
    306 F. Supp. 3d 1147 (C.D. Cal. 2018) ........................... 9, 10

Clifford v. Quest Software Inc.
    38 Cal. App. 5th 745 (Ct. App. 2019) ................................. 11

Colopy v. Uber Technologies, Inc.
    Case No. 19-cv-06462-EMC (N.D. Cal.) ....................... passim

Cunningham v. Lyft, Inc.
    Case No. 1:19-cv-11974-IT (D. Mass.) ................................. 5

Doe v. Trump
    2019 WL 6324560 (D. Or., Nov. 26, 2019) ........................... 4

Dynamex Operations W., Inc. v. Superior Court
    4 Cal. 5th 903 (2018) ...................................... 6, 12, 13, 19

Fish v. Kobach
    189 F. Supp. 3d 1107 (D. Kan. 2016) .................................... 9

Gooch v. Life Inv'rs Ins. Co. of Am.
    672 F. 3d 402 (6th Cir. 2012) ................................................ 9

Hamama v. Adducci
    261 F. Supp. 3d 820 (E.D. Mi. 2017) .................................... 9

Hamama v. Adducci
    912 F. 3d 869 (6th Cir. 2018) ................................................ 9

J.L. v. Cissna
    341 F. Supp. 3d 1048 (N.D. Cal. 2018) ................................ 9

Johnson v. VCG-IS, LLC
    Case No. 30-2015-00802813-CU-CR-CXC (Cal. Sup. Ct. Sept. 5, 2018)............ 14

**PLAINTIFF'S NOTICE OF AND EMERGENCY MOTION
FOR PRELIMINARY INJUNCTION**

Just Film, Inc. v. Merchant Services, Inc.
        474 Fed. Appx. 493 (9th Cir. 2012) ...................................................... 10

Lavan v. City of Los Angeles
        797 F. Supp. 2d 1005 (C. D. Cal. 2011) ................................................. 9

Lee v. Orr
        2013 WL 6490577 (N.D. Ill. 2013) ...................................................... 10

Magana v. DoorDash, Inc.
        343 F. Supp. 3d 891 (N.D. Cal. 2018) ................................................. 11

Massachusetts Delivery Ass'n. v. Coakley
        2014 WL 4824976 (1st. Cir. Sept. 30, 2014) ........................................ 13

McGill v. Citibank, N.A.
        2 Cal. 5th 945 (2017) ........................................................... 4, 8, 11

National Organization for Reform of Marijuana Laws (NORML) v. Mullen
        608 F. Supp. 945 (N.D. Cal. 1985) ....................................................... 9

Nieto v. Fresno Beverage Co., Inc.
        33 Cal. App. 5th 274 (2019) .............................................................. 5

O'Connor v. Uber Technologies, Inc.,
        82 F. Supp. 3d 1133 (N.D. Cal. 2015) ............................................. 6, 13

People of the State of California v. Maplebear, Inc.
        Case No. 2019-48731(Cal. Sup. Ct. Feb. 18, 2020) ....................... passim

Planned Parenthood of Kansas v. Andersen
        882 F.3d 1205 (10th Cir. 2018) .......................................................... 9

Planned Parenthood of Kansas v. Mosier
        2016 WL 3597457 (D. Kan. July 5, 2016) ............................................. 9

Price v. City of Stockton
        390 F.3d 1105 (9th Cir. 2004) .......................................................... 10

Rittman v. Amazon
        383 F. Supp. 3d 1196 (W.D. Wash. 2019) ............................................. 5

Robinson v. Jardine Ins. Brokers Intern. Ltd.
        856 F. Supp. 554 (N.D. Cal. 1994) .................................................... 18

Rodriguez v. Providence Cmty. Corr., Inc.
        155 F. Supp. 3d 758 (M.D. Tenn. 2015) ................................................ 9

Singh v. Uber Techs.
        2019 WL 4282185 (3rd Cir., Sept. 11, 2019) ........................................ 5

Thomas v. Johnston
        557 F.Supp. 879 (W.D.Tex.1983) ...................................................... 10

V.L. v. Wagner
        669 F. Supp. 2d 1106 (N.D. Cal. 2009) ................................................ 9

iv
**PLAINTIFF'S NOTICE OF AND EMERGENCY MOTION
FOR PRELIMINARY INJUNCTION**

Verhines v. Uber Technologis, Inc.
    CGC-20-583684 (Cal. Sup. Ct.) ........................................................ 1, 8

Waithaka v. Amazon
    2019 WL 3938053 (D. Mass., Aug. 20, 2019) ......................................... 5

Zepada v. INS
    753 F.2d 719 (9th Cir. 1985) ............................................................ 4, 10

Zinser v. Accufix Research Institute, Inc.
    253 F. 3d 1180 (9th Cir. 2001) ............................................................ 11

**Statutes**

2014 California Assembly Bill No. 1522
    California 2013–2014 Regular Session, § 1(e) ............................. 4, 16, 19

2019 California Assembly Bill No. 5
    California 2019–2020 Regular Session § 1(e) ...................................... 16

Assembly Bill No. 5 ("AB 5") ............................................................... 6, 7

Emergency Paid Sick Leave Act,
    H.R. 6201 – 2, 116th Congress § 5101 (2020) ....................................... 2

Fed. R. Civ. P. 65 .......................................................................... 5, 9, 12

Federal Arbitration Act ("FAA")
    9 U.S.C. § 1 ..................................................................................... 5

**PLAINTIFF'S NOTICE OF AND EMERGENCY MOTION
FOR PRELIMINARY INJUNCTION**

1

2

### I.   **INTRODUCTION**

Plaintiff Spencer Verhines brings this emergency motion to seek a preliminary injunction

enjoining Defendant Uber Technologies, Inc. ("Uber") from misclassifying its drivers as

independent contractors when they are actually employees under California law.  Because of this

misclassification, Uber is in particular violating Cal. Lab. Code § 246 by failing to provide the

drivers with state-mandated paid sick leave – which will exacerbate the global health crisis of

COVID-19 (the "coronavirus") and which requires immediate emergency redress.[1]  This motion

should be adjudicated forthwith, both because it seeks a preliminary injunction (and not a final

adjudication on the merits)[2] and because of the manner in which Uber's ongoing refusal to

recognize its drivers as employees and provide state-mandated paid sick leave compounds the

public health crisis and irreparably harms Uber drivers, passengers, and the general public.

Plaintiff in this case is also a named plaintiff in Colopy v. Uber Technologies, Inc., Case

No. 19-cv-06462-EMC (N.D. Cal.), in which the plaintiff previously sought and was denied a

---

[1]    Plaintiff originally brought his paid sick leave claim in California Superior Court for the County of San Francisco on March 12, 2020, see Dkt. 1-4.  Plaintiff filed an *ex parte* application on March 17, 2020, seeking the same emergency preliminary injunctive relief that Plaintiff seeks here.  See Verhines v. Uber Technologis, Inc.., (Cal. Sup. Ct.) CGC-20-583684, Plaintiff's *Ex Parte* Application for Emergency Preliminary Injunction.

The next day, on March 18, 2020, Uber removed the case to federal court. See Dkt. 1. Plaintiff therefore now submits an emergency motion for preliminary injunction pursuant to the Federal Rules of Civil Procedure.  Plaintiff urges the Court that these procedural steps should not be allowed to delay adjudication of Plaintiff's emergency motion, which was first filed March 17, 2020, and respectfully requests that this Motion be heard forthwith.

[2]    Because a preliminary injunction is not a final adjudication on the merits, it can and should be decided before the Court determines any issues regarding enforceability of Uber's arbitration agreement.  Plaintiff himself is not bound by Uber's arbitration agreement, but Plaintiff anticipates that Uber will argue that the Court cannot issue a preliminary injunction that would afford relief to other Uber drivers who may be bound by an arbitration agreement.  Just last month, a California court issued a preliminary injunction prohibiting the gig economy company "Instacart" from misclassifying its workers, despite the fact that the company had already filed a motion to compel arbitration (and deferring consideration of the motion to compel arbitration).  See People of the State of California v. Maplebear, Inc., Case No. 2019-48731 (Cal. Sup. Ct. Feb. 18, 2020), at *2 (Ex. 3 to Declaration of Shannon Liss-Riordan ("Liss-Riordan Decl.")).  Moreover, the unique urgency of the circumstances compel immediate consideration and timely adjudication of the Plaintiff's emergency motion for preliminary injunction, as a federal court in Massachusetts addressing this same issue has already concurred. See dicussion at p. 5 n. 10.

1

**PLAINTIFF'S NOTICE OF AND EMERGENCY MOTION FOR PRELIMINARY INJUNCTION**

preliminary injunction enjoining Uber from misclassifying its drivers as independent contractors under California law. See Declaration of Shannon Liss-Riordan (Liss-Riordan Decl.) ¶ 30. However, as discussed infra, at pp. 4-5 and Part II.A, the instant emergency motion for preliminary injunction stands in stark contrast to the previous request as it raises a more pronounced emergency, as the coronavirus has revealed the dire consequence wrought by the Uber's misclassification of its drivers and the resulting deprivation of important employee protections: Uber's failure to provide state-mandated paid sick leave means Uber drivers will need to work *while sick* to make ends meet and thus substantially increases the likelihood that Uber drivers, passengers, and the general public will contract the coronavirus.[3]

The urgency of the circumstances is undeniable. The World Health Organization has classified the coronavirus as a pandemic, California has declared a state of emergency and just today issued a shelter-in-place mandate – with an exception made for "gig economy" workers, including Uber drivers. Id. ¶¶ 8, 10.[4] Uber drivers are on the front lines of this crisis (driving residents where they need to go for essential services and allowing them to avoid public transportation), yet they are not even receiving the benefits of California's state-mandated labor protections because of their misclassification as independent contractors.

Because Uber does not provide them state-mandated paid sick leave (and because they are among the few essential workers permitted to work in communities such as the Bay Area), Uber drivers who cannot afford to not work will ***continue*** to work despite feeling sick. In the words of gig economy driver Mariah Mitchell:

---

[3]    In this motion, Plaintiff has also addressed the concerns expressed by the Court in denying the motion in the Colopy case. See Part III.A.

[4]    Government mandates are rapidly changing in response to the crisis, and these orders are as of this writing. In recognition of the threat to public health as a result of employers denying paid sick leave during this pandemic, Congress just passed emergency legislation that attempts to address the issue. Emergency Paid Sick Leave Act, H.R. 6201 – 2, 116th Congress § 5101 (2020). However, the federal Act will not cover Uber drivers if they are not recognized as employees and because of the exemption for large employers. Liss-Riordan Decl. ¶ 2, 13. The state of emergency that led Congress to take this historic action only further confirms the need for immediate enforcement of any additional state law protections already in place.

**PLAINTIFF'S NOTICE OF AND EMERGENCY MOTION FOR PRELIMINARY INJUNCTION**

> I can't self-quarantine because not working is not an option. If I don't make enough money, I can't feed my children for the next six weeks. I'm not stopping, fever or no fever. And that's what most other gig workers would do too, because none of us makes enough money to save up for an emergency like this.

Id. ¶ 15.  This driver is not alone.  Gig Workers Rising recently sent a letter to Governor Gavin Newsom and other state officials, asserting that "Uber. . . and other gig economy companies are putting drivers and passengers at risk during coronavirus," by refusing to classify Uber drivers as employees and provide them with basic employee protections. Id. ¶ 16.[5]

Uber drivers may drive **dozens** of passengers (including those who have been ordered to self-quarantine) each day – and are clearly not able to maintain the six-foot distance recommended by experts to prevent the rapid spread of COVID-19 (the "coronavirus"). Id. ¶ 17. Thus, in the face of this global crisis, there appears a resounding consensus: "Companies that do not pay sick workers to stay home are endangering their workers, their customers and the health of the broader public." Id. ¶ 17.  California already has on the books a paid sick leave law, and the only thing standing in the way of Uber drivers receiving this critical benefit is Uber's refusal to acknowledge that its drivers are employees under California law.[6]

The facts that underlie this motion are thus starkly different than that of the motion for preliminary injunction filed in Colopy seeking similar relief.  The crisis has revealed the dire consequence of drivers being deprived basic employee protections and increased the urgency of the need for relief – both for themselves and the general public.  Under these exigent circumstances, as outlined immediately below and further herein, Plaintiff clearly meets the

---

[5]     In support, one worker confirmed: "Sickness is not an option for me because not working is not an option. If I do get sick, I will have to continue to work. . ." Liss-Riordan Decl. ¶ 16.

[6]     Uber has stated that it plans to provide compensation to drivers "if any of the following happen: (1) You are diagnosed with COVID-19; (2) You are placed in an individual quarantine by a public health authority; (3) You are personally asked to self-isolate by a public health authority or licensed medical provider; or (4) Your account is restricted by Uber as a result of information provided by a public health authority that you have been diagnosed or have been exposed to someone diagnosed with COVID-19." Id. ¶ 24.  However, California's paid sick leave statute does not require a diagnosis (nor does it require personal instructions from a provider or other authority to take sick leave); Uber's new voluntary policy therefore falls short of the requirements of California law.

**PLAINTIFF'S NOTICE OF AND EMERGENCY MOTION FOR PRELIMINARY INJUNCTION**

standard for preliminary injunction, and the relief requested is appropriate at this stage.

**As an initial matter**, **the relief requested in this putative class action is appropriate at this stage,** regardless of whether a class has been certified.  In the Ninth Circuit, "[d]istrict courts are empowered to grant preliminary injunctions 'regardless of whether the class has been certified.'"  Brantley v. Maxwell–Jolly, 656 F.Supp.2d 1161, 1178 n. 14 (N.D. Cal.2009) (citing Schwarzer, Tashima and Wagstaffe, *Federal Civil Procedure Before Trial,* § 10:773 at 10–116 (TRG 2008)).[7]  This is particularly true under exigent circumstances. See, e.g., Doe v. Trump, 2019 WL 6324560, at *22 (D. Or., Nov. 26, 2019) (issuing preliminary injunction in putative class action).  Even if the Court were to read its authority to issue a preliminary injunction prior to class certification as limited, the individual injunctive relief requested here is inevitably identical to the injunctive relief that would be requested on behalf of the class, making clear this Court's authority to grant the relief. See Zepada v. INS, 753 F.2d 719, 728 n. 1 (9th Cir. 1985), discussed infra Part III.A.

Preliminary injunctive relief is also appropriate at this stage regardless of Uber's anticipated argument that most of its drivers are subject to arbitration clauses.  The facts presented here are distinct from those in Colopy.  Plaintiff here may rely on McGill v. Citibank, N.A., 2 Cal. 5th 945, 955 (2017), in which the California Supreme Court held that a defendant may not wield an arbitration agreement to thwart pursuit of public injunctive relief.  This request for a preliminary injunction is to benefit both the drivers *and the public* by aiding Uber drivers in obtaining employee protections to which they are legally entitled that will benefit public health.[8]  Plaintiff also intends to show that Uber drivers are exempt from the Federal Arbitration Act

---

[7]   See also cases cited infra at pp. 9-10.

[8]   When it passed its paid sick time policy, the California State Legislature recognized that "*paid sick days will have an enormously positive impact on the public health of Californians by allowing sick workers paid time off to care for themselves . . . reducing the likelihood of spreading illness to other members of the workforce*." 2014 California Assembly Bill No. 1522, California 2013–2014 Regular Session, § 1(e) (emphasis supplied).  Even apart from the COVID-19 crisis, this protection is designed to benefit the public.  The pandemic has only made increased the clarity that enforcement of this employee protection is for the public benefit and is urgently needed.

4

**PLAINTIFF'S NOTICE OF AND EMERGENCY MOTION FOR PRELIMINARY INJUNCTION**

("FAA"), 9 U.S.C. § 1, as they fall within the transportation worker exemption to the Act.[9] Again, the Court need not make a final determination on either of these points at this stage, but only a determination of whether Plaintiff is *likely* to ultimately succeed on these arguments.

Uber simply should not be allowed to wield its arbitration agreement to delay urgently needed relief, nor does the law require that this Court defer adjudication of a preliminary injunction pending a determination on the enforceability of the arbitration agreement for putative class members.  Indeed, a California state court already granted a preliminary injunction to Instacart workers, even before this pressing health crisis, see Maplebear, Inc., Case No. 2019-48731, at *4 (Ex. 3 to Liss-Riordan Decl.) (and even though the defendant had already moved to compel arbitration), id., at *2, and another federal court considering the same arguments raised here has already agreed the preliminary injunction request must urgently be decided under these unique circumstances (and would consider it notwithstanding the defendant's pending motion to compel arbitration).[10]

The Court should grant this motion for a preliminary injunction because Plaintiff meets the four factors considered under Fed. R. Civ. P. 65(a) and (b).

---

[9]   See Nieto v. Fresno Beverage Co., Inc. (2019) 33 Cal. App. 5th 274, 276-77; Singh v. Uber Techs., (3rd Cir., Sept. 11, 2019) 2019 WL 4282185; see also Rittman v. Amazon (W.D. Wash. 2019) 383 F. Supp. 3d 1196, 1201-02 (Amazon delivery drivers fall under the § 1 transportation worker exemption, as they transport some goods that travel across state lines, even though the drivers themselves do not cross state lines); Waithaka v. Amazon, (D. Mass., Aug. 20, 2019) 2019 WL 3938053, at *2–4 (same).

[10]   In Cunningham v. Lyft, Inc., Case No. 1:19-cv-11974-IT (D. Mass.), ECF No. 75 (filed March 13, 2020), Plaintiffs' counsel (same as undersigned) also filed an emergency motion for a preliminary injunction seeking to enjoin Lyft from misclassifying its drivers as independent contractors under the Massachusetts "ABC" test and thus illegally depriving drivers state-mandated sick leave during this crisis.  Judge Indira Talwani held a telephonic conference with the parties on March 16, 2020, to discuss an orderly briefing schedule.  In responding to Lyft's request for a determination *first* on Lyft's pending Motion to Compel Arbitration (ECF Nos. 16-17), Judge Talwani indicated that she intended to adjudicate the emergency motion for preliminary injunction first, given the urgency of the circumstances, which were distinct from an earlier filed motion for preliminary injunction in that case (similar to the one previously filed in Colopy). Liss-Riordan Decl. ¶ 30, Ex. 4 at 13, 17 ("when we were here in the fall and December [] there was a slightly more theoretical irreparable harm and concern. I'm sitting here with … the courtroom blocked with this issue of – the public health issue being raised. It may be that plaintiff has no relief available, but the urgency of briefing the issue, I have a hard time not being impacted by the urgency of the situation around us.").

5
**PLAINTIFF'S NOTICE OF AND EMERGENCY MOTION FOR PRELIMINARY INJUNCTION**

**First**, it is clear that Plaintiff is likely to prevail on the merits of his misclassification claim. Under the conjunctive, three-pronged "ABC" test announced in <u>Dynamex Operations W.,</u> <u>Inc. v. Superior Court</u>, 4 Cal. 5th 903, 956–57 (2018), and enacted in Assembly Bill No. 5 ("AB 5"), a putative employer bears the burden of satisfying <u>all</u> three prongs of the test in order to justify classifying workers as independent contractors. <u>See generally</u> Cal. Lab. Code § 2750.3(a)(1) (as amended by AB 5, effective Jan. 1, 2020). Here, Uber cannot satisfy Prong B, which requires an alleged employer to prove that the worker performs services outside its usual course of business. <u>Id</u>.

While Uber may attempt to argue that it is merely a technology company, Uber cannot avoid the inevitable conclusion that it is a transportation company.[11] <u>See</u>, <u>e.g.</u>, <u>O'Connor v. Uber</u> <u>Techs., Inc.</u>, 82 F. Supp. 3d 1133, 1144 (N.D. Cal. 2015) ("[I]t strains credulity to argue that Uber is not a 'transportation company' or otherwise is not in the transportation business."). Uber is clearly aware that its drivers must now be classified as employees and receive the protections of the Labor Code: AB 5 and its adoption of the "ABC" test is widely understood as requiring "gig economy" companies such as Uber to classify their drivers as employees and provide them state-mandated employment protections. Liss-Riordan Decl. <u>Id</u>. ¶ 25. The bill has even been dubbed the "gig labor bill" and described as "dealing a potential body blow to gig economy players, **like Uber** and Lyft." <u>Id</u>. ¶ 26.

Yet, despite the clear message of the state's highest court, its legislature, and the Governor (who signed A.B. 5 into law), Uber has continued to refuse to comply with the law (and instead seeks to overturn it[12]) and is now contributing to the global health crisis by denying

---

[11]     Uber also operates UberEats, a subsidiary that provides food delivery services. The arguments laid out herein, and the request for a preliminary injunction enjoining Uber's misclassification of its drivers as independent contractors, applies to UberEats drivers as well. UberEats drivers are still similarly permitted to work and risk spreading the virus by touching food that is delivered into people's homes and entering restaurants and interacting with staff.

[12]     Uber instead has stated it will invest $30 million for a ballot initiative to overturn or exempt itself from the "ABC" test in A.B. 5, thus acknowledging that it is impacted by the law. Liss-Riordan Decl. ¶ 27.

**PLAINTIFF'S NOTICE OF AND EMERGENCY MOTION FOR PRELIMINARY INJUNCTION**

them state-mandated paid sick leave. The issuance of a preliminary injunction based on Plaintiff's likelihood of success under Prong B on these facts is appropriate. See Maplebear, Inc., Case No. 2019-48731, at *4 (Ex. 3 to Liss-Riordan Decl.).[13]

Thus, as Uber's own actions acknowledges, Uber will likely fail to satisfy its burden under Prong B, and Plaintiff will thus prevail in proving that Uber, as a consequence, has violated the California paid sick leave law, since Uber does not even acknowledge its drivers to be employees entitled to the benefit of Cal. Lab. Code § 246.

**Second**, Plaintiff will be able to establish irreparable injury. Uber's ongoing refusal to acknowledge its drivers as employees and thereby provide basic state-mandated workplace protections to its drivers poses an imminent, substantial risk of harm to its drivers and to the general public. Faced with the choice of staying home without pay and risking losing access to housing, food, and other necessities of living, Uber drivers across California will continue working and risk exposing hundreds of riders on a weekly basis to this deadly disease.

**Third**, as to the balancing of harms, there can be no serious argument that helping prevent the spread of a global pandemic is outweighed by the cost to Uber of coming into compliance with Dynamex, A.B. 5, and Cal. Lab. Code § 246 (which the company will have to inevitably do, whenever the pending misclassification claims are adjudicated). Uber has simply ignored the pronouncement of the California Supreme Court for nearly two years since the Dynamex decision was issued, and the consequences are being wrought in dire form.

**Fourth**, it is not in the public interest to allow Uber to continue to misclassify its drivers and inflict public harm on its drivers, passengers, and the general public. Uber should not be allowed to use litigation tactics (such as procedural delays or moving to compel arbitration) to

---

[13]     In People of the State of California v. Maplebear, Inc., (Cal. Sup. Ct. Feb. 18, 2020) Case No. 2019-48731, at *4 (Ex. 3 to Liss-Riordan Decl.), Judge Taylor ordered the gig economy company Instacart to stop misclassifying its workers ("Shoppers") as independent contractors. In evaluating the preliminary injunction motion, Judge Taylor found that "is it more likely than not that the People will establish at trial that the 'Shoppers' perform a core function of defendant's business" (Prong B) and found that (more likely than not) the People would prevail on the other two prongs (Prongs A and C) of the "ABC" test. Id.

**PLAINTIFF'S NOTICE OF AND EMERGENCY MOTION FOR PRELIMINARY INJUNCTION**

stall resolution and enforcement of § 246 no matter the consequences.  Plaintiffs and the public simply cannot wait years, or even weeks, for Uber to comply with California's state-mandated paid sick leave law.  In the interim, the rapid proliferation of the virus that occurs will be irreversible.

## II.      FACTUAL AND PROCEDURAL BACKGROUND

On March 12, 2020, Plaintiff brought this case on behalf of himself and other Uber drivers throughout California, alleging that Uber has misclassified its drivers as independent contractors, when in reality they are employees of Uber and therefore entitled to employment protections under the California Labor Code, including paid sick leave.  See Verhines v. Uber Technologies, Inc., (Cal. Sup. Ct.) CGC-20-583684, Complaint, at ¶ 2 (Ex. 1 to Liss-Riordan Decl.).  Plaintiff is an adult resident of Foothill Ranch, California, where he has worked as an Uber driver since 2014.  Id. ¶ 7. Uber has misclassified Plaintiff and other Uber drivers as independent contractors. Id. ¶ 24.  Because Uber drivers are in fact employees, they are entitled to paid sick days under Cal. Lab. Code § 246.  Uber has violated this provision by, as a matter of policy, failing to provide paid sick days to its drivers as required by California law.  Id. ¶ 30.

Shortly after filing this case in state court, Plaintiff filed an *ex parte* application for an emergency preliminary seeking the same relief sought here, on March 17, 2020.  See Verhines, CGC-20-583684, Plaintiff's *Ex Parte* Application for Emergency Preliminary Injunction.  Uber removed to federal court the next day, on March 18, 2020, see Dkt. 1, and Plaintiff now renews his motion for an emergency preliminary injunction before this Court.

## III.     ARGUMENT
### A.      The Court Should Adjudicate Plaintiff's Emergency Motion for Injunctive Relief Forthwith

In Colopy, the Court determined that a preliminary injunction was inappropriate at an early juncture in the litigation for three reasons: (1) "the issuance of class-wide relief prior to the certification of the class is strongly disfavored"; (2) Plaintiff did not seek a public injunction under McGill; (3) and Uber's arbitration agreement made preliminary injunctive relief

**PLAINTIFF'S NOTICE OF AND EMERGENCY MOTION FOR PRELIMINARY INJUNCTION**

"inappropriate at [that] stage." Liss-Riordan Decl. ¶ 29.  Before analyzing the four factors

Plaintiff must meet under Fed. R. Civ. P. 65(a) and (b), infra Part B, Plaintiff addresses each of

these concerns in turn.

First, this Court **does** have the authority to issue injunctive relief that runs to the class

prior to class certification. See Brantley v. Maxwell–Jolly, 656 F.Supp.2d 1161, 1178 n. 14

(N.D. Cal.2009); J.L. v. Cissna, 341 F. Supp. 3d 1048, 1070 (N.D. Cal. 2018) (granting

California-wide preliminary injunctive relief prior to class certification); Chhoeun v. Marin, 306

F. Supp. 3d 1147, 1164 (C.D. Cal. 2018) (same, commenting that "an injunction is necessary to

forestall harm to putative class members that is likely to transpire before the parties can litigate a

motion for class certification"); Lavan v. City of Los Angeles, 797 F. Supp. 2d 1005, 1019 (C. D.

Cal. 2011) (granting a class-wide injunction prior to class certification) (internal quotation marks

and citation omitted); V.L. v. Wagner, 669 F. Supp. 2d 1106 (N.D. Cal. 2009) (also issuing

preliminary injunction in putative class action); National Organization for Reform of Marijuana

Laws (NORML) v. Mullen, 608 F. Supp. 945, 963-964 (N.D. Cal. 1985) (same, injunction

extended to all similarly situated California residents); see also Hamama v. Adducci, 261 F.

Supp. 3d 820, 840 n.13 (E.D. Mi. 2017), vacated on other grounds by Hamama v. Adducci, 912

F. 3d 869 (6th Cir. 2018) (preliminary injunction ordered prior to class certification noting that

"the Sixth Circuit has held that 'there is nothing improper about a preliminary injunction

preceding a ruling on class certification.'" (quoting Gooch v. Life Inv'rs Ins. Co. of Am., 672 F.

3d 402, 433 (6th Cir. 2012)); Fish v. Kobach, 189 F. Supp. 3d 1107, 1147-1148 (D. Kan. 2016)

("case law supports this Court's authority to issue classwide injunctive relief based on its general

equity powers before deciding the class certification motion"); Planned Parenthood of Kansas v.

Mosier, 2016 WL 3597457, at *26 (D. Kan. July 5, 2016) aff'd in part, vacated in part sub nom.

Planned Parenthood of Kansas v. Andersen, 882 F.3d 1205 (10th Cir. 2018) ("case law supports

this Court's authority to issue classwide injunctive relief based on its general equity powers

before deciding a class certification motion"); Rodriguez v. Providence Cmty. Corr., Inc., 155 F.

**PLAINTIFF'S NOTICE OF AND EMERGENCY MOTION FOR PRELIMINARY**
**INJUNCTION**

Supp. 3d 758, 767 (M.D. Tenn. 2015) (granting classwide injunctive relief, prior to certification of class, noting "'[a] district court may, in its discretion, award appropriate classwide injunctive relief prior to a formal ruling on the class certification issue based upon either a conditional certification of the class or its general equity powers" (quoting Thomas v. Johnston, 557 F.Supp. 879, 917 (W.D.Tex.1983)); Lee v. Orr, 2013 WL 6490577 at *1 (N.D. Ill. 2013) ("District courts have the power to order injunctive relief covering potential class members prior to class certification. The court may conditionally certify the class or otherwise order a broad preliminary injunction, without a formal class ruling, under its general equity powers. The lack of formal class certification does not create an obstacle to classwide preliminary injunctive relief when activities of the defendant are directed generally against a class of persons") (internal quotation marks and citations omitted).  The Zepada v. INS, 753 F.2d 719, 728 n. 1 (9th Cir. 1985), case does not stand for the broad proposition that preliminary injunctions cannot be granted prior to class certification. See Chhoeun v. Marin, 306 F. Supp. 3d 1147, 1164 (C.D. Cal. 2018) ("Zepada only stands for the proposition that after a motion to certify a class was expressly denied, the court was limited to entering an injunction only as to the individual plaintiffs. Id. at 727.  Zepada does not apply where, as here, an injunction is necessary to forestall harm to putative class members that is likely to transpire before the parties can litigate a motion for class certification."). Even if the Court were to read Zepada and existing case law in the Ninth Circuit as cabining this authority, the Ninth Circuit unequivocally recognizes that when preliminary injunction seeks individual relief inevitably identical to class-wide relief an injunction is appropriate.[14]  Here, the relief sought by Plaintiff is inevitably identical to that sought by the class, as Plaintiff cannot be remedied without the issuance of a broad preliminary injunction mandating that (a) Uber must change its ***policy*** of misclassification in order to provide state-

---

[14]     See also Just Film, Inc. v. Merchant Services, Inc., 474 Fed. Appx. 493, 495 (9th Cir. 2012) (affirming issuance of preliminary injunction in putative class action, in part because "plaintiff has shown that a class-wide injunction is necessary to remedy the alleged class-wide harm"); Price v. City of Stockton, 390 F.3d 1105, 1117-18 (9th Cir. 2004) (affirming issuance and scope of preliminary injunction).

**PLAINTIFF'S NOTICE OF AND EMERGENCY MOTION FOR PRELIMINARY INJUNCTION**

mandated sick leave, and (b) Uber must change its policy *as to all drivers* in order to negate the harm to the public of increased risk of coronavirus infection.  Thus, the relief sought here on behalf of Plaintiff is identical to the which would benefit the class.[15]

Second, this motion for preliminary injunction requests public injunctive relief, which under McGill would exempt the concern of class members being bound by arbitration clauses. Public injunctive relief "has the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public." McGill v. Citibank, N.A., 2 Cal. 5th 945, 955 (2017) (quoting Broughton v. Cigna Healthplans of California, 21 Cal. 4th 1066, 1077 (1999)).  While in Colopy, the Court determined that "incidental benefit to the public from ensuring [the employer's] compliance with wage and hour laws" was insufficient to bring the preliminary injunction enjoining Uber's misclassification under McGill, here the scenario is starkly different. Colopy v. Uber Technologies, Inc., Case No. 19-cv-06462-EMC (N.D. Cal.), ECF No. 30, at *4 (quoting Clifford v. Quest Software Inc., 38 Cal. App. 5th 745, 755 (Ct. App. 2019), review denied (Nov. 13, 2019)).  Here, as discussed infra regarding irreparable harm, this is plainly a request for public relief as its primary aim is to enable Uber drivers to receive the protection of state-mandated paid sick leave pursuant to California wage and order laws *in order to protect the public* by providing Uber drivers the means to stay home when sick and thus prevent the spread of the coronavirus.  This request is not analogous to the preliminary injunctions sought in Clifford or Magana v. DoorDash, Inc., 343 F. Supp. 3d 891 (N.D. Cal. 2018) (also discussed by the Court in Colopy).  The coronavirus pandemic presents an unprecedented public health risk

---

[15]    In a footnote, the Court in Colopy addressed the distinction between Rule 23(b)(2) classes and Rule 23(b)(3) classes, commenting that the former is more amenable to the Zepada exception. Id. at 3 n. 1. Here, unlike in Colopy where various claims are being brought including those that seek damages, here Planitiff pursues a sole claim for which the primary relief sought is declaratory and injunctive relief, which would lend itself to a Rule 23(b)(2) class. See Zinser v. Accufix Research Institute, Inc., 253 F. 3d 1180, 1196 (9th Cir. 2001) ("Class certification under Rule 23(b)(2) is appropriate only where the primary relief sought is declaratory or injunctive relief.").

**PLAINTIFF'S NOTICE OF AND EMERGENCY MOTION FOR PRELIMINARY INJUNCTION**

that requires enforcement of state law protections already in place in order to serve the public good.

Third, Uber's arbitration agreement does not make relief at this stage inappropriate. As discussed supra note 10, another district court facing an emergency motion brought under analogous circumstances recognized that the urgency of this moment requires adjudication forthwith, as preliminary injunctions are designed to provide. And in Maplebear, Inc., Case No. 2019-48731, at *4 (Ex. 3 to Liss-Riordan Decl.), a California court heard and granted a preliminary injunction motion to enjoin gig economy company Instacart's misclassification of its workers *before* ruling on Instacart's pending motion to compel arbitration of the claims. Id. at *2.

### B.  The Court Should Grant Plaintiff's Motion for a Preliminary Injunction

Under Fed. R. Civ. P. 65(a) and (b), in order to prevail on a motion for a preliminary injunction, Plaintiffs must establish that they have raised "serious questions" going to the merits of their claim, that they are likely to suffer irreparable harm, that the balance of hardships tips sharply in their favor, and that an injunction would be in the public interest. Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134–39 (9th Cir. 2011). The Ninth Circuit follows a "sliding scale approach," under which the "elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." Id. at 1131. As set forth below, Plaintiff meets all of these requirements and, moreover, when balanced in conjunction with each other (given the high likelihood of success on the merits and the scale of the harm), compel the issuance of a preliminary injunction.

In light of the COVID-19 outbreak and the state of emergency declared in California, Uber's continued noncompliance with Dynamex and AB 5—particularly by denying Uber drivers legally guaranteed paid sick time—poses a significant, imminent risk to Uber employees and to the general public. Preliminary injunctions are designed exactly for this situation, where judicial intervention and a court order is required to compel an affirmative act based on the high likelihood of plaintiff's success on the merits and to prevent public harm, as discussed below.

**PLAINTIFF'S NOTICE OF AND EMERGENCY MOTION FOR PRELIMINARY INJUNCTION**

### 1. Plaintiff Has Not Only Raised a Serious Question on the Merits, But is Likely to Prevail on the Merits

Under the stringent "ABC test" adopted in <u>Dynamex</u> and codified in AB 5, workers are presumed to be employees. <u>Dynamex</u>, 4 Cal.5th at 956-57. The putative employer bears the burden of proving the conjunctive, three-prong test that: "(A) the worker is free from the control and direction of the hiring entity in connection with the performance of the work, both under the contract for the performance of the work and in fact; *and* (B) that the worker performs work that is outside the usual course of the hiring entity's business; *and* (C) that the worker is customarily engaged in an independently established trade, occupation, or business of the same nature as the work performed." <u>Id</u>. at 956-57; Cal. Lab. Code § 2750.3. Uber cannot meet this difficult standard.

Specifically, Uber drivers perform services in the usual course of Uber's business—providing transportation services—and thus Uber cannot meet prong "B" of the "ABC test." Multiple courts have concluded that drivers and couriers perform services in the "usual course of business" under Prong B of the "ABC" test, even when their employers claim they merely "arrange" rides or deliveries, or try to claim that they are in the "technology" business, rather than the "transportation" industry. <u>O'Connor v. Uber Technologies, Inc.</u> (N.D. Cal. 2015) 82 F. Supp. 3d 1133, 1144 ("[I]t strains credulity to argue that Uber is not a 'transportation' company or otherwise is not in the transportation business."); <u>Cotter v. Lyft</u> (N.D. Cal. 2015) 60 F.Supp.3d 1067, 1069 ("[T]he argument that Lyft is merely a platform, and that drivers perform no service for Lyft, is not a serious one"). Applying Massachusetts law, from which the California Supreme Court adopted the "ABC" test, the First Circuit noted that "[t]here can be no dispute that [couriers] act in the course of business for the delivery companies, even if one performs the deliveries and the other arranges the deliveries." <u>Massachusetts Delivery Ass'n. v. Coakley</u>, (1st. Cir. Sept. 30, 2014) 2014 WL 4824976 at *7 Applying the "ABC" test now under California law, Judge Taylor found that Instacart, a grocery delivery service (that similarly describes itself as a technology platform), would be unable to carry its burden under Prong B (or any prong of the

test) of proving its Shoppers, who fulfill the grocery orders, are properly classified as independent contractors:

> At this point is it more likely than not that the People will establish at trial that the "Shoppers" perform a core function of defendant's business; that they are not free from defendant's control; and that they are not engaged in an independently established trade, occupation or business. Establishing any one of these would be enough[.]

Maplebear, Inc., Case No. 2019-48731, at *4 (Ex. 3 to Liss-Riordan Decl.).  Likewise, a California state court, following a litany of Massachusetts case law, granted summary adjudication to plaintiff exotic dancers on the question of "employee status" under Prong B, based on minimal facts and common sense determinations regarding the defendant strip club's usual course of business and the services performed by the plaintiff dancers, despite the defendant's denial that it was in the adult entertainment business. Johnson v. VCG-IS, LLC (Cal. Sup. Ct. Aug. 30, 2018) Case No. 30-2015-00802813-CU-CR-CXC, at *4 (Ex. 2 to Liss-Riordan Decl.).  Here, the Court can similarly make a determination – which only requires at this point a preliminary determination of the *likelihood* of Plaintiff's prevailing on the merits of the misclassification claim – based on the facts before the Court now.

Because Uber drivers are employees under the "ABC" test, Uber drivers are entitled to paid sick leave days under Cal. Lab. Code § 246.  This provision requires employers to allow employees to accrue sick days at the rate of not less than one hour for every thirty hours worked after working for the employer for 30 days within a year from the start of their employment. Because Uber does not even acknowledge its drivers to be employees, it does not pretend to be complying with the paid sick leave provision of Cal. Lab. Code § 246.[16]  Accordingly, Plaintiff

---

[16]     Uber may attempt to argue that its policy issued in light of the emergent crisis, somehow mitigates its violation of § 246. This argument must fail. **(1)** The policy does not comply with the statute as it requires a driver to obtain a COVID-19 diagnosis or be put under quarantine or intructed or required to to self-isolate by mandate.  As an intial matter, COVID-19 tests are in notably short supply, such that receiving the official diagnosis or quarantine Uber requires for this "benefit" is exceedingly unlikely. Liss-Riordan Decl. ¶24. **(2)** Most importantly, the policy does nothing to mitigate the public harm as public health recommendations advise anyone to stay home *as soon as* they begin feeling sick, and to maintain a six foot distance to prevent the spread of COVID-19, which Uber drivers cannot do in close quarters with passengers.

**PLAINTIFF'S NOTICE OF AND EMERGENCY MOTION FOR PRELIMINARY INJUNCTION**

has demonstrated a likelihood of success on the merits.  Absent court intervention, however, Uber drivers and the public will suffer interim harm greater than Uber would suffer from having to comply with the law.

### 2.   Uber Drivers, as well as the Public, Will Suffer Irreparable Harm Should a Preliminary Injunction Not Issue

The second factor the California considered is whether the plaintiff will suffer irreparable harm in the absence of a preliminary injunction. "Irreparable harm is traditionally defined as harm for which there is no adequate legal remedy, such as an award of damages." Arizona Dream Act Coalition, 757 F.3d 1053, 1068 (9th Cir. 2014).

Irreparable, potentially catastrophic harm to Uber drivers and to the general public will result from Uber and other companies' ongoing misclassification of their employees.  The WHO has confirmed that we are in the midst of a global pandemic. Liss-Riordan Decl. ¶ 8.  In California alone—as of this writing—there are 978 confirmed cases of COVID-19, with 19 confirmed deaths, while thousands of residents may have already been exposed to the disease. Id. ¶ 10. California has declared a state of emergency, and the State Department of Public Health is urging all to avoid close contact with people who are sick and to stay "away from work, school, or other people if you become sick with respiratory symptoms like fever and cough." Id. at ¶¶ 9, 11.  Just this evening, the Governor of California issued a state-wide shelter-in-place. Id. ¶ 12.  However, gig workers are excluded from the order, as residents are still allowed to take Uber and Lyft rides for essential travel, demonstrating how Uber drivers are providing essential transportation services to the city and highlighting how Uber drivers who are sick are poised to become vectors of the disease.

Yet, by continuing to misclassify its drivers, Uber is failing to provide them the basic workplace protections—to which they are legally entitled—which would enable them to comply with public health directives.  There can be no question that enforcing employee protections, already in place, would increase safety for both Uber drivers and the general public.  Even in

**PLAINTIFF'S NOTICE OF AND EMERGENCY MOTION FOR PRELIMINARY INJUNCTION**

ordinary circumstances, Uber's failure to provide its drivers these basic workplace protections unacceptably increases the likelihood that its drivers and passengers will get sick and spread illnesses.  In the current climate, denying workers these protections poses an intolerable risk to the health and safety of Uber's employees, its customers, and the public at large.

The connection between public health and the availability of basic employment protections like paid sick days and leave policies is well established. Id. ¶ 19. A recent study found a that state-mandated access to paid sick leave policies reduced population-level flu infection rates by an average of eleven percent within the first year of the implementation of such laws. Id. ¶ 20.  Unsurprisingly, low-wage workers are the most likely to lack these basic workplace protections, id. ¶ 22. Without the protections afforded by these and other workplace laws, workers like Uber drivers are more likely to work while they are sick, increasing the likelihood they will transmit illnesses among the general public. Id.  Because they also lack the protection of other workplace protections like minimum wage and overtime laws, misclassified workers have no choice but to continue working while sick to make ends meet. Id.

Recognizing this connection between paid sick time policies and public health, California requires employers to provide their employees paid sick time. Cal. Lab. Code § 246.  When it passed its paid sick time policy, the Legislature recognized that "*paid sick days will have an enormously positive impact on the public health of Californians by allowing sick workers paid time off to care for themselves . . . reducing the likelihood of spreading illness to other members of the workforce*." 2014 California Assembly Bill No. 1522, California 2013–2014 Regular Session, § 1(e) (emphasis supplied).  And when it passed AB 5, the legislature made clear that it intended to ensure that misclassified workers gained access to these basic workplace protections. It noted that AB 5 would ensure that workers who are "currently exploited by being misclassified" would gain access to "the basic rights and protections they deserve under the law, including . . . *paid sick leave* and paid family leave."  2019 California Assembly Bill No. 5, California 2019–2020 Regular Session § 1(e) (emphasis added).  It is clear, then, that but-for

**PLAINTIFF'S NOTICE OF AND EMERGENCY MOTION FOR PRELIMINARY INJUNCTION**

Uber's ongoing misclassification of its drivers in violation of AB 5, Uber drivers would be granted this vital protection of paid sick leave.

In the context of a global pandemic, Uber's ongoing refusal to provide basic workplace protections to its drivers poses an imminent, substantial risk of harm to its drivers and to the general public. Faced with the choice of staying home without pay and risking losing access to housing, food, and other necessities of living, Uber drivers across California will continue working and risk exposing hundreds of riders on a weekly basis to this deadly disease.

Uber drivers may drive **dozens** of passengers each day – and are clearly not able to maintain the six foot distance recommended by experts to prevent the rapid spread of COVID-19 (the "coronavirus"). Liss-Riordan Decl. ¶ 17.  Numerous health authorities, including the CDC, recognize that an essential component of mitigating the spread of such illnesses is the ability to self-quarantine and practice social distancing upon the onset of symptoms. Id. at ¶ 17.  Such protective measures are key to "flattening the curve" of the rate of infection so as to avoid overwhelming available health care resources. Id.  The availability of paid sick leave protections is essential to the success of such social distancing strategies.[17]  Even though they are the workers most likely to lack—or, as here, be illegally denied—state-mandated sick leave protections, Uber drivers and other service workers are at higher risk of spreading such illnesses because they regularly come into contact with the general public in the course of their work. Id. ¶ 22. The health of Uber drivers, consumers, and the general public thus requires immediate injunctive relief to reduce the rate at which this deadly disease spreads by ensuring Uber drivers have access to workplace protections that will realistically allow them to comply with essential public health directives.

---

[17]     Indeed, studies have linked the dearth of paid sick leave policies in the United States with negative health outcomes during the 2009–10 H1N1 outbreak. Id. at ¶ 18. The American Public Health Association estimates an additional 7 million people were infected and 1,500 deaths due to contagious employees who did not (or could not) stay home from work to recover. Id.

**PLAINTIFF'S NOTICE OF AND EMERGENCY MOTION FOR PRELIMINARY INJUNCTION**

### 3.   The Balance of Hardships Tips Sharply in Plaintiff's Favor

Finally, the balance of hardships tips sharply in Plaintiff's favor.  In considering this factor, the Court should consider whether the injuries of Plaintiff and the class would outweigh any harm to Uber.  See Chalk v. U.S. Dist. Court Cent. Dist. of California, 840 F.2d 701, 710 (9th Cir. 1988).  In calculating hardship, courts must "consider the impact of the proposed preliminary injunction on both parties," including the size and strength of each party. Robinson v. Jardine Ins. Brokers Intern. Ltd., 856 F. Supp. 554, 559 n.20 (N.D. Cal. 1994) (holding that the balance of hardships tipped in employee's favor where employer was a large company with annual revenues of nearly $8 billion).

Uber is a massive international corporation, which recently received a $82.4 billion valuation in March of 2019. Liss-Riordan Decl. ¶ 29.  Indeed, Uber CEO Dara Khosrowshahi informed investors this week that Uber has $10 billion in unrestricted cash that the company is simply sitting on during this crisis. Id. ¶ 30.  If Uber is enjoined from classifying its drivers as independent contractors and required to provide paid sick days, any financial harm, immediate or otherwise, pales in comparison to that shouldered by its drivers, its passengers, and the general public.  For instance, issuing an injunction even absent concerns regarding COVID-19, the Superior Court in San Diego found that the "balance of harms" resulting from Instacart's similar misclassification scheme favored its "Shoppers" and the public as a result of the harms inflicted by the misclassification scheme.  See Ruling on Mot. For Preliminary Injunction, Maplebear, Inc., Case No. 2019-48731 (Ex. 3 to Liss-Riordan Decl.).  Given the substantial likelihood of success Plaintiff has on the merits of his underlying misclassification claim (and thus resultant paid sick leave claims), Uber is almost certainly legally required to comply with California's paid sick time law and therefore cannot point to costs due to reclassification (or a change in business model) as a harm that should be weighed in the preliminary injunction analysis.  See Maplebear, Inc., Case No. 2019-48731, at *4 (Ex. 3 to Liss-Riordan Decl.) (discounting costs to Instacart in the preliminary injunction analysis, as the company had two years to come into

**PLAINTIFF'S NOTICE OF AND EMERGENCY MOTION FOR PRELIMINARY INJUNCTION**

compliance with the law and cannot now "claim surprise").

Besides, there can be no question that any potential "harm" Uber faces in being required to comply with employment standards in effect since <u>Dynamex</u> was decided two years ago (and A.B. 5 went into effect in January) is drastically outweighed by the public health risk posed by Uber's ongoing refusal to properly classify and provide paid sick time to its drivers.

### 4. An Injunction is in the Public Interest

Finally, enjoining Uber's conduct is in the public interest. As discussed, the irreparable harm suffered by Uber drivers, passengers, and the general public is enormous. The legislature has made a clear determination that paid sick time—in the manner it specified by statute— guarantees substantial benefits to workers and benefits public health. 2014 California Assembly Bill No. 1522, California 2013–2014 Regular Session, § 1(e). Uber's ongoing noncompliance with that law poses a substantially greater harm to its drivers and to the general public. Uber should not get to decide what level of compliance with workplace protections it deems sufficient to serve its employees and the public.

The Court should thus grant an immediate emergency preliminary injunction to require Uber's compliance with these laws.

### IV.  **CONCLUSION**

For the foregoing reasons, this Court should enjoin Uber from misclassifying its drivers as independent contractors, thus entitling them to the protections of California wage laws, including paid sick leave. Doing so immediately is essential to avoiding imminent harm to Uber drivers, as well as the general public.

**PLAINTIFF'S NOTICE OF AND EMERGENCY MOTION FOR PRELIMINARY INJUNCTION**

1  Dated: March 19, 2020                     Respectfully submitted,

2                                             SPENCER VERHINES, on behalf of himself and
                                             all others similarly situated,
3
                                             By his attorneys,
4
                                             _/s/ Shannon Liss-Riordan_____
5                                             Shannon Liss-Riordan, SBN 310719
                                             Anne Kramer, SBN 315131
6                                             LICHTEN & LISS-RIORDAN, P.C.
                                             729 Boylston Street, Suite 2000
7                                             Boston, MA 02116
                                             Telephone:    (617) 994-5800
8                                             Facsimile:    (617) 994-5801
                                             Emails: sliss@llrlaw.com; akramer@llrlaw.com
9

10                          **CERTIFICATE OF SERVICE**

11
       I, Shannon Liss-Riordan, hereby certify that a copy of this document and all supporting
12
    documents referenced herein were delivered via electronic filing CM/ECF system to counsel for
13
    Defendant on March 19, 2020.
14

15                                          */s/ Shannon Liss-Riordan*_____

16                                          Shannon Liss-Riordan, SBN 310719

17

18

19

20

21

22

23

24

                                             20
            **PLAINTIFF'S NOTICE OF AND EMERGENCY MOTION FOR PRELIMINARY
                                          INJUNCTION**