SHANNON LISS-RIORDAN, SBN 310719
sliss@llrlaw.com
ANNE KRAMER, SBN 315131
akramer@llrlaw.com
LICHTEN & LISS-RIORDAN, P.C.
729 BOYLSTON STREET, SUITE 2000
BOSTON, MA 02116
Telephone:    (617) 994-5800
Facsimile:    (617) 994-5801

Attorneys for Plaintiffs
Christopher James and Spencer Verhines,
individually and on behalf of all others
similarly situated

GIBSON, DUNN & CRUTCHER LLP
THEODORE J. BOUTROUS JR., SBN 132099
  tboutrous@gibsondunn.com
THEANE D. EVANGELIS, SBN 243570
  tevangelis@gibsondunn.com
BLAINE H. EVANSON, SBN 254338
  bevanson@gibsondunn.com
HEATHER L. RICHARDSON, SBN 246517
  hrichardson@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

JOSHUA S. LIPSHUTZ, SBN 242557
  jlipshutz@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone:  415.393.8200
Facsimile:  415.393.8306

Attorneys for Defendant
UBER TECHNOLOGIES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER JAMES and SPENCER VERHINES, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br>v.<br><br>UBER TECHNOLOGIES, INC.,<br><br>                    Defendant. | CASE NO. 3:19-cv-06462-EMC<br>CASE NO. 3:20-cv-01886-EMC<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Action Filed:  September 11, 2019<br>Trial Date:  None Set<br><br>Date:        May 6, 2020<br>Time:        10:30 a.m.<br>Place:       Courtroom 5<br>Judge:       Hon. Edward M. Chen |

Plaintiffs Christopher James and Spencer Verhines ("Plaintiffs") and Defendant Uber Technologies, Inc. ("Defendant" or "Uber"), by and through their respective counsel of record, hereby submit this Joint Case Management Statement, pursuant to this Court's order dated April 22, 2010 (ECF No. 48), the Standing Order for All Judges of the Northern District of California, and

Civil Local Rule 16-9, in advance of the Case Management Conference scheduled in these consolidated cases for May 6, 2020, at 10:30 a.m.

## 1. JURISDICTION AND SERVICE

### A. Plaintiffs' Statement

This Court has jurisdiction because these consolidated cases were filed as class actions, pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2), and also under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02.

### B. Defendant's Statement

Uber has been served with the complaint and does not contest that this Court has jurisdiction over the individual Plaintiffs because those Plaintiffs have not entered into individual arbitration agreements with Uber. Defendants assert that these actions may not proceed on a class basis for the reasons set forth in its prior CMC Statement. Because Plaintiffs have represented that they will dismiss their class claims with prejudice, Uber does not elaborate on that assertion here, but reserves the right to do so if the class claims are not ultimately dismissed.

Uber does not intend to raise other issues regarding personal or subject matter jurisdiction or venue at this time, but reserves the right to do so at a later date.

## 2. FACTS

### A. Plaintiffs' Statement

Uber is a transportation company based in California, which operates extensively throughout the State of California. Plaintiff Christopher James is an adult resident of Stockton, California, where he has worked as an Uber driver since approximately November 2015. Plaintiff Spencer Verhines is an adult resident of Foothill Ranch, California, where he has worked as an Uber driver since 2014. Uber has misclassified Plaintiffs as independent contractors when they are in actuality employees pursuant to <u>Dynamex Operations W., Inc. v. Superior Court</u> 4 Cal. 5th 903 (2018), and Cal. Lab. Code §2750.3 ("A.B. 5"). Plaintiffs have suffered California Labor Code violations, including failure to receive expense reimbursement, minimum wage, overtime, and paid sick leave.

### B.  Defendant's Statement

Uber develops and licenses a mobile software application (the "Uber App") that permits riders to arrange trips with nearby local ride-share drivers.  Individuals who choose to use the Uber App as drivers may use it as much or as little as they want, and accept as many or as few ride requests as they want, whenever they want and wherever they want–they may also use multiple other apps providing similar services without any objection, limitation, or encumbrance by Uber.  For these and other reasons, Uber contends that drivers are not employees.  In the interest of brevity, Uber does not re-assert additional facts relating to its position here.

Uber does not provide transportation services and denies that it controls aspects of the work performed by workers using the Uber App to connect with customers.

Because drivers who use the Uber App are not employees, Uber did not violate California employment law.  Uber therefore did not fail to pay minimum wage, overtime premiums, paid sick leave, and business expense reimbursements nor did it fail to provide accurate itemized wage statements to Plaintiffs.

## 3.  LEGAL ISSUES

The primary legal issues are (1) whether Plaintiffs are employees of Uber under California law and (2) whether Plaintiffs are entitled to recover for their alleged claims for unpaid business expenses, minimum wage, overtime, paid sick leave, unlawful and unfair business practices, and failure to provide itemized pay statements.

### A.  Plaintiffs' Statement

The ABC test will apply to all of Plaintiffs' claims.  Because Plaintiffs resolved their earlier claims against Uber in 2018, their live claims in this case all post-date the California Supreme Court's decision in Dynamex (and thus the retroactivity of that decision is not relevant here).  Nevertheless, Uber asserts below that certain of Plaintiffs' claims may not follow the ABC test.  Plaintiffs disagree and expect the parties will brief these issues for the Court.

### B.  Defendant's Statement

Answering the first question as to whether Plaintiffs are Uber's employees will entail many sub-questions such as which legal test applies to Plaintiffs' claims during which time periods.  For

1  example, the ABC test did not apply to any claims other than those arising under the Industrial Wage
2  Commission's wage orders before January 1, 2020.  But the California Supreme Court is currently
3  considering whether *Dynamex Operations West, Inc. v. Superior Court of Los Angeles*, 4 Cal. 5th 903
4  (2018), applies retroactively to wage-order claims before it issued *Dynamex*.  And there are numerous
5  legal questions concerning which test applies for 2020 claims.  If Uber is not a hiring entity, if
6  Assembly Bill 5 ("AB 5," codified at Cal. Lab. Code § 2750.3(a)(1)) is unconstitutional, or if an AB
7  5 exemption applies, then *S.G. Borello & Sons, Inc. v. Department of Industrial Relations*, 48 Cal.3d
8  341 (1989), may govern.  Even after the Court determines which test applies for which purposes,
9  there will be legal issues concerning how that test applies.  And if the factfinder determines that
10 Plaintiffs are Uber employees, whether Uber has violated the statutes they assert here will involve
11 numerous other legal issues requiring the Court to interpret those statutes in a context in which they
12 were never intended to apply (and do not properly apply).
13      Plaintiffs have represented that they intend to dismiss their class claims.  However, should
14 they fail to do so, then another primary legal issue is whether Plaintiffs' claims may appropriately be
15 adjudicated on a classwide basis pursuant to Rule 23 of the Federal Rules of Civil Procedure
16 ("FRCP") and due process.  This list is not exhaustive.
17 **4.    MOTIONS**
18      No motions are currently pending.
19      **A.    Plaintiffs' Statement**
20       Plaintiffs intend to move for partial summary judgment with respect to their misclassification
21 under Prong B of the ABC test.  As the California Supreme Court recognized in adopting the
22 Massachusetts version of the ABC test, the three-prong test is conjunctive, meaning that if an
23 employer cannot prove even one prong, then the worker is an employee; the Court also specifically
24 recognized that "a court is free to consider separate parts of the ABC standard in whatever order it
25 chooses" and, in order to simplify misclassification cases, encouraged courts to consider just one
26 prong of the test, before engaging in lengthy unnecessary analysis of the other prongs.  <u>Dynamex</u>, 4
27 Cal. 5th at 966 ("in many cases it may be easier and clearer for a court to determine whether or not
28 part B or part C of the ABC standard has been satisfied.").  Indeed, applying this same test in

Massachusetts, courts have routinely granted summary judgment to plaintiffs on liability for misclassification based on a defendant's inability to carry its burden under Prong B.[1] In California as well, the first court to apply the test did the same. See Johnson v. VCG-IS, LLC Case No. 30-2015-00802813-CU-CR-CXC (Cal. Sup. Ct. Aug. 30, 2018) (granting summary judgment to plaintiff strippers under ABC test and deferring to trial the question of whether defendant club had violated particular Labor Code provisions). See also Vazquez v. Jan-Pro Franchising International, Inc., 923 F.3d 575, 596 (9th Cir. 2019) (explaining Prong B is particularly susceptible to summary judgment), reh'g granted opinion withdrawn, 930 F.3d 1107, and on reh'g, 939 F.3d 1045, and opinion reinstated in part on reh'g, 939 F.3d 1050 .

      Uber seeks to delay adjudication of Plaintiffs' motion for summary judgment on Prong B by arguing that it may satisfy the "business to business" exemption under AB-5 or that it may succeed in its appeal in its argument that AB-5 is unconstitutional. Neither is a ground to delay adjudication of Plaintiffs' motion. Regardless of AB-5, Plaintiffs' live claims in this case all post-date Dynamex and thus the ABC test will certainly apply here. Moreover, Uber's challenge to the constitutionality of AB-5 was soundly rejected, see Olson v. State of California, Case No. 2:19-cv-10956, at *13, 14, 18 (C.D. Cal., Feb. 10, 2020) (concluding "that no serious questions exist as to Plaintiffs' likelihood of success on the merits" of their challenge to the statute), and there is no basis to delay this case pending its appeal of that order. Even if the Court were to agree with Uber that the ABC test would not apply to some aspect of Plaintiffs' claims (which Plaintiffs deny), it would still be most efficient for the Court to consider Plaintiffs' motion for partial summary judgment and then determine what further discovery, if any, is needed for the remainder of the case.

      Uber also states that it may move to dismiss the complaint. Such a motion would be futile and should not be allowed to delay adjudication of Plaintiffs' summary judgment motion.

---

[1] The Massachusetts Appeals Court affirmed this approach in Carey v. Gatehouse Media Massachusetts I, Inc. 92 Mass. App. Ct. 801 (2018) (affirming trial court's grant of summary judgment to plaintiff newspaper delivery drivers on liability for misclassification).

### B. Defendant's Statement

Uber currently reserves its right to file a motion to dismiss after Plaintiffs file the anticipated amended complaint removing their class claims. Uber anticipates filing a motion for summary judgment and will oppose any motion for summary judgment filed by Plaintiffs. To the extent Plaintiffs intend to move for summary judgment solely on "Prong B" of the ABC test, Uber respectfully submits that this would be an improper and inefficient use of the summary judgment procedure, as explained further below.

Uber is confident that it will prevail on any motion regarding whether it meets Prong B of the ABC test. *See* Cal. Lab. Code § 2750.3(a)(1)(B). However, standing alone, a finding that Uber does not satisfy Prong B as a matter of law would not entitle the Plaintiffs to any ultimate relief for a number of reasons. First, "misclassification" is not a standalone claim: rather, it is only one *element* of Plaintiffs' claims, and any dispositive motion must therefore take into account additional elements and defenses to Plaintiffs' Labor Code claims. Second, the ABC test codified in AB 5 (Cal. Lab. Code § 2750.3(a)(1)) simply does not apply here for many reasons, including that: AB 5 is unconstitutional because it violates the Equal Protection Clause by subjecting Uber to different standards than it subjects similarly situated entities, it deprives drivers and Uber of their right to pursue their chosen occupation, and it impairs the obligations of Uber's contracts with drivers; Uber is not a "hiring entity" of drivers, who are not "person[s] providing labor or services for remuneration" to Uber; Uber falls within the "referral agency" exemption because it connects drivers with customers; and Uber falls within the "business-to-business" exemption because Uber and drivers (who are sole proprietors of their driving businesses) have independent contracting relationships.

Indeed, Uber already is challenging AB 5's constitutionality in *Olson v. California*, No. 2019-cv-10956-DMG (C.D. Cal., filed Dec. 30, 2019). That case is currently on appeal before the Ninth Circuit (*see* No. 2020-55267 (9th Cir.)).[2] The Court will need to consider all of these threshold

---

[2] Uber's (and its co-plaintiffs') opening brief in the appeal is due on May 7, 2020. The government's response is due June 4, and plaintiffs' reply is due June 25. Argument has not yet been scheduled. Meanwhile, the case is proceeding in the district court, with a hearing on the government's motion to dismiss scheduled for May 22.

1  inquiries—including the question whether AB 5 is constitutional, now being litigated before the
2  Ninth Circuit—before even turning to the application of the legal test for employment.  And even *if*
3  AB 5 applies here, it undoubtedly only applies to Plaintiffs' claims *after* the effective date of the law
4  (January 1, 2020)—but Plaintiffs' claims here predate January 1, 2020.  Thus, the Court would still
5  have to evaluate Plaintiffs' claims under the *Borello* standard regardless of any finding on Prong B of
6  the ABC test.  And, as noted above, *Dynamex* applies only to wage order claims.

7  A request for review of this single, non-dispositive element is improper under the Federal
8  Rules of Civil Procedure.  Rule 56(a) allows a party to "move for summary *judgment*, identifying
9  each claim or defense—or the part of each claim or defense—on which summary *judgment* is
10 sought."  Fed. R. Civ. P. 56(a) (emphases added).  But, as explained above, a proceeding cabined
11 merely to the Prong B element would not culminate in a "judgment" at all.  *See*, *e.g.*, *Cardenas v.*
12 *Kanco Hay, L.L.C.*, 2016 WL 3881345, at *7 (D. Kan. July 18, 2016) ("While plaintiff's motion
13 states that plaintiff is asking for partial summary judgment, the motion does not describe a claim or
14 part of a claim upon which a 'judgment' may be entered.  Judgment cannot be entered upon …
15 'elements' of the claims upon which plaintiff moves for partial summary judgment."); *William*
16 *Powers v. Emcon Assocs., Inc.*, 2017 WL 4102752, at *2 (D. Colo. Sept. 14, 2017) (though a party
17 may "mov[e] for summary judgment on less than every claim … motions seeking to resolve only one
18 issue relevant to a plaintiff's claims [are] entirely inappropriate under any provision of Rule 56").
19 To read Rule 56(a) as authorizing piecemeal "summary judgment" proceedings any time a party
20 wants to establish that a given "material fact … is not genuinely in dispute" would contradict the
21 structure and text of Rule 56.  Specifically, Rule 56(g) states that "[i]f the court does not grant all the
22 relief requested by the motion, it may enter an order stating any material fact — including an item of
23 damages or other relief — that is not genuinely in dispute and treating the fact as established in the
24 case."  Rule 56(g).  Under this framework, a party may not move independently for a narrow
25 summary judgment proceeding to establish a given "material fact … is not genuinely in dispute."
26 Rather, it is expressly left to the Court to determine whether or if to address such a question, and it
27 may do so only *after* an otherwise fulsome and appropriate Rule 56(a) motion has been presented.
28 *See Schiff v. Barrett,* 2011 WL 6963096, at *21 (N.D. Cal. Sept. 8, 2011) (noting Rule 56(g) "does

not authorize a party to bring an independent motion to establish certain facts as true."); *Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 919 F.3d 405, 415 (7th Cir. 2019) (noting the sort of narrow inquiries authorized under Rule 56(g) are "ancillary to the ultimate summary-judgment analysis.").

Accordingly, reading Rule 56(a) to authorize a limited inquiry such as that Plaintiffs intend to raise here would render Rule 56(g) surplusage. The Court may issue a pronouncement on a discrete factual question (such as the application of Prong B) only if "does not grant all the relief requested by" a proper summary judgment motion under Rule 56(a). Fed. R. Civ. P. 56(g).

In any case, even if this Court believed such a limited and piecemeal summary judgment motion were legally *permissible*, the Court should decline, on grounds of judicial economy, to permit it. As this Court's Civil Standing Order makes clear, each party is "limited to filing one summary judgment motion," and any additional motions come only by "leave of the Court." Civil Standing Order ¶ 9. This reflects that, in most circumstances, an approach allowing litigants to pick out discrete issues one at a time is flatly inconsistent with securing a "just" or "speedy" determination in this matter, inviting piecemeal, seriatim, and indecisive summary judgment motions. Fed. R. Civ. P. 1. *See also*, *Moses H. Cone Mem'l Hosp. Operating Corp. v. Conifer Physician Servs., Inc.*, 2017 WL 1378144, at *5 (M.D.N.C. Apr. 11, 2017) (though the court "agrees that disposition of less than an entire action is permissible under [Rule 56(a)] … to piecemeal and separately decide each ground … does not serve the best interest of justice here."). Accordingly, the Court should not permit Plaintiffs to file a summary judgment motion limited to Prong B of the ABC test.

**5.  AMENDMENT OF PLEADINGS**

Plaintiffs filed a Consolidated Complaint on April 16, 2020. *See Colopy* Dkt. 42. Plaintiffs have represented that they intend to file an amended complaint removing their class claims so that they can proceed directly to filing a summary judgment motion. Uber states that, after this amended complaint, no further amendments should be allowed. Plaintiffs state that further amendments should be permitted if warranted.

**6.  EVIDENCE PRESERVATION**

The parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines") and have complied with their evidence preservation obligations.

**7.     DISCLOSURES**

The parties have agreed to exchange their initial disclosures by May 8, 2020.

**8.     DISCOVERY**

   **A.     Plaintiffs' Statement**

The Court's determination of whether Uber has misclassified Plaintiffs as independent contractors can be decided simply based on Prong B of the ABC test, without the extensive discovery that Uber claims it needs to defend against this motion. In particular, Prong B will focus on the question of whether Uber is a transportation company or is merely a technology company as it claims (an argument this Court already rejected in the O'Connor case). Uber does not need discovery to determine what type of a company it is. And there is no need for expert discovery on this issue either. Not only is expert evidence not appropriate for this question, but Plaintiffs are not aware of any court having relied on expert testimony in determining an alleged employer's liability under Prong B.

To the extent that Uber believes it needs discovery to respond to any arguments made in Plaintiffs' summary judgment motion, Uber can avail itself of Rule 56(d) to explain to the Court with particularity what discovery it claims to need.

Even with the COVID-19 crisis, there is no reason that Uber needs six months for discovery to respond to Plaintiffs' motion. In fact, the difficulties in carrying out discovery during the crisis weigh in favor of allowing the parties to proceed with the legal briefing and deferring any discovery, which would simply be needed on the questions related to liability for the particular Labor Code claims at issue.

   **B.     Defendant's Statement**

Plaintiffs have brought claims for failure to reimburse business expenses; minimum wage; unlawful and/or unfair business practices; overtime; and failure to provide proper itemized pay statements. Each of these claims has, as a predicate, alleged misclassification; however, each claim contains numerous additional elements and defenses. Before Plaintiffs can seek summary judgment on their claims, Uber will need to obtain discovery so that the Court can determine whether there are

any disputes of material fact regarding these claims and Uber's defenses. At a minimum, this discovery will entail the following:

- Written discovery from and depositions of each of the three named Plaintiffs and the four currently known driver declarants, which will be essential to establish (among other things) whether they are free from Uber's direction and control (an element of both the referral agency and business-to-business exemptions to AB 5); whether they provide their own tools (also relevant to the exemptions); whether they set their own hours and terms of work and are free to accept or reject clients and contracts (also relevant to the exemptions); whether they have business licenses (also relevant to the exemptions); and whether they deliver services under their name (an element of the referral agency exemption).
- Data regarding use of the Uber App and other similar apps by Plaintiffs and other drivers. This will be relevant to (among other things) whether Uber is in the business of transportation or whether it is a technology company (which goes to Prong B), whether AB 5's regulatory scheme is rational (relevant to Uber's constitutional defenses) and whether Plaintiffs are customarily engaged in an independently established business of the same nature as that involved in the work performed for the rider (relevant to both the referral agency and business-to-business exemptions).
- Third-party discovery and data from other "gig economy" platforms and services that Plaintiffs and putative class members may have used concurrently with the Uber App. This is relevant to evaluating whether and how many of the Plaintiffs and other drivers "multi-app"—an inquiry that goes to the threshold question of whether drivers are employees and to the claims and defenses asserted. For example, evidence that Plaintiffs and other drivers switch between different apps to find customers will show that they are "customarily engaged in an independently established trade, occupation, or business of the same nature as that involved in the work performed" (Prong C); that they "contract[] with other businesses to provide the same or similar services" (business-to-business exemption); that they are "free to seek work elsewhere, including through a competing agency" (referral agency exemption); that they run their own driving businesses (constitutional right to pursue the occupation of one's choice); that Uber does not control or direct their work (Prong A); and that Uber is not in the same business as drivers (Prong B).
- Third-party discovery from riders, delivery customers, and members of the public, which will be useful for establishing (among other things) whether Uber is understood as a technology company (relevant to Prong B of the ABC test) and whether customers use the Uber Apps for "errands" (relevant to the referral agency exemption).
- Expert reports and declarations, which will be useful in determining (among other things) whether Uber is a technology company and whether AB 5 is a rational regulatory scheme.

Although Uber intends to seek and obtain this necessary discovery as expeditiously as possible, it faces significant challenges in doing so over the next six months (at minimum) in light of the current health crisis and shelter-in-place environment due to the COVID-19 pandemic. Formerly routine interviews, meetings, and depositions that customarily occur in person likely will now need to be conducted remotely, using phone and web-based video tools, which are not always accessible or to all participants, and are oftentimes less efficient, cumbersome, and unreliable. Further, Uber's employees—data scientists, software developers, and engineers—who are responsible for the Uber

1  App and gathering and managing internal data and documents referenced above are now operating
2  remotely, if at all, and with impacted schedules and limited capacity.  The same is almost certainly
3  true for other "gig economy" platforms and services to which Uber intends to direct third-party
4  discovery requests.  Additionally, while the parties will endeavor to resolve any discovery disputes
5  before seeking resolution from the Court, it is possible in any litigation that certain contentious
6  discovery issues may need to be brought before and resolved by the Court, which is also significantly
7  resource-constrained during this health crisis.  Thus, it is reasonable to expect the discovery process
8  to take some time.  Uber respectfully submits it will need at least 6 months to conduct the discovery it
9  needs to oppose summary judgment, even if the Court permits Plaintiffs to move forward with a
10 Prong B-only summary judgment motion).  In light of the parties' resolution regarding Plaintiffs'
11 preliminary injunction motion in the *Verhines* case, as addressed in paragraph 12 below, there is no
12 urgency in this case that would require expediting this schedule.

**9.     CLASS ACTIONS**

   **A.     Plaintiffs' Statement**

As stated at the last Case Management Conference, because of Uber's repeated tactics in delaying adjudication of its liability for misclassifying its drivers as independent contractors, Plaintiffs intend to proceed directly to moving for summary judgment in this case.  Because the Court has stated that it will not allow a summary judgment motion to be heard prior to a motion for class certification, Plaintiffs will drop their class claims in this case so that this case can move promptly to adjudication of Uber's liability for misclassification.

   **B.     Defendant's Statement**

Plaintiffs have represented that they intend to file an Amended Complaint removing their class claims with prejudice.  Nonetheless, Uber asserts that class certification is not appropriate in these consolidated cases for the reasons set forth in its prior CMC statement.  Uber reserves the right to raise all arguments in opposition to class certification should Plaintiffs fail to file an Amended Complaint removing their class claims.

In addition, Uber takes issue with Plaintiffs' implication that Uber delayed proceedings in *O'Connor v. Uber Technologies, Inc.*, No. 13-3826-EMC (N.D. Cal.).  Any "delay" in this action was

the result of the numerous appeals that resulted from plaintiffs in that matter ignoring binding arbitration agreements, which they are attempting to do once again. *See O'Connor v. Uber Techs., Inc.*, 904 F.3d 1087 (9th Cir. 2018) (consolidating 11 appeals relating to arbitrability of plaintiffs' claims and ruling in Uber's favor). Further, *O'Connor* ended in a settlement, and Plaintiffs' counsel herself touted early settlement proposals as a "fair, reasonable, and adequate resolution of the claims brought in this case." *O'Connor*, No. 13-3826-EMC, Dkt. 519, Declaration of Shannon Liss-Riordan In Support Of Plaintiffs' Motion For Preliminary Approval Of Class Action Settlement (April 21, 2016).

## 10. RELATED CASES

The Court has related these cases to *O'Connor v. Uber Technologies, Inc.*, Case No. 13-cv-03826-EMC (N.D. Cal.), and *Capriole v. Uber Technologies, Inc.*, Case No. 20-cv-02211-EMC (N.D. Cal.). The parties are also aware of the following related case pending in this District: *Yucesoy v. Uber Technologies, Inc.*, Case No. 15-cv-00262-EMC (N.D. Cal.).

## 11. RELIEF

### A. Plaintiffs' Statement

Plaintiffs seek relief as set forth in their latest complaint, Dkt. 42 ¶¶ 54-70, with the caveat that they have agreed to drop their class claims (without prejudice) so that this case may proceed directly to summary judgment on liability.

### B. Defendant's Statement

Uber denies that Plaintiffs are entitled to recover any damages or relief whatsoever. Specifically, Uber denies that Plaintiffs may seek a "public injunction" (or any other form of preliminary injunction (*see Verhines* Dkts. 36, 39)).

Moreover, if Plaintiffs intends to proceed directly to summary judgment on liability, they must dismiss their class claims *with prejudice*. Otherwise, Plaintiffs could attempt to certify a class *after* obtaining a judgment on liability, which would violate the one-way intervention rule. *See Villa v. S.F. Forty-Niners, Ltd.*, 104 F. Supp. 3d 1017, 1020–21 (N.D. Cal. 2016) (holding plaintiff's motion for partial summary judgment before class certification was "procedurally improper" under the one-way intervention rule).

12. **SETTLEMENT AND ADR**

The parties have not engaged in mediation or settlement discussions, other than for the court-ordered mediation before Chief Magistrate Judge Joseph Spero, which led to the resolution of Plaintiffs' Emergency Motion for a Preliminary Injunction (*Verhines* Dkt. 72).

13. **CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES**

The parties do not consent to a magistrate judge for all purposes.

14. **OTHER REFERENCES**

No other references are requested or appropriate at this time.

15. **NARROWING OF ISSUES**

The parties do not believe any issues can be narrowed by agreement at this time.

16. **EXPEDITED TRIAL PROCEDURE**

   A. **Plaintiffs' Statement**

   Plaintiffs intend to file a motion for summary judgment as to liability under Prong B. To the extent a trial is needed (for example, with respect to the particular Labor Code claims at issue or to determine damages), Plaintiffs believe that an expedited trial is appropriate and warranted here. There is no reason that the issues in this case, assuming it proceeds on behalf of the two plaintiffs, cannot be decided expeditiously.

   B. **Defendant's Statement**

   Uber may file a motion for summary judgment before trial. Uber does not believe this case is suitable for the Expedited Trial Procedure, particularly given the need for extensive discovery in order for it to be able to defend itself in this action, as set forth in Section 8.B. above.

17. **SCHEDULING**

   A. **Plaintiffs' Statement**

   Plaintiffs propose the following schedule for briefing their motion for summary judgment as to Uber's misclassification of them as independent contractors:

   · Initial Disclosures Exchanged: May 8, 2020
   · Plaintiffs' Deadline to File Motion for Summary Judgment: May 15, 2020
   · Uber's Deadline to File Opposition for Summary Judgment: June 5, 2020

1 · Plaintiffs' Reply: June 19, 2020

**B.   Defendant's Statement**

The parties have recently entered into a settlement resolving the preliminary injunction motion Plaintiffs filed in the *Verhines* case.  As a result of that settlement, Plaintiffs have withdrawn their motion for a preliminary injunction seeking emergency relief before this Court.  There is therefore no longer any urgency that justifies proceeding to summary judgment without providing Defendants adequate opportunity to conduct discovery in order to present every available defense and to develop a fulsome record and briefing on the numerous thorny novel issues the application of AB 5 presents.  Thus, in light of this lack of urgency and the current difficulties in obtaining discovery outlined in Section 8.B. above, Uber proposes the following schedule regarding summary judgment, which is the earliest it anticipates being able to litigate summary judgment in light of the constraints discussed above:

· Initial Disclosures Exchanged, Discovery Commences:  May 8, 2020
· Plaintiffs' Deadline to File Motion for Summary Judgment and Supporting Evidence/Expert Reports:  November 6, 2020
· Uber's Deadline to File Opposition to Motion for Summary Judgment and Supporting Evidence/Expert Reports:  December 5, 2020
· Plaintiffs' Deadline to File Reply in Support of Motion for Summary Judgment: December 18, 2020

**18.   TRIAL**

**A.   Plaintiffs' Statement**

Plaintiffs have not demanded a jury trial.  Plaintiffs believe that independent contractor misclassification is a legal issue that can be decided by the Court on summary judgment and that a trial will only be necessary for perhaps determining the particular Labor Code violations and calculating damages.

### B. Defendant's Statement

Uber submits that the Court should not set a trial date at this time, and must first resolve several threshold issues, including whether Plaintiffs may file a summary judgment motion on Prong B of the ABC test only.

## 19. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

### A. Plaintiffs' Statement

Plaintiffs are not corporate entities and therefore have not filed Corporate Disclosure statement; pursuant to Civil L.R. 3-15, Plaintiffs previously certified (Dkt. 41) and repeat here that the there are no other persons, associations of persons, firms, partnerships, corporations (including parent corporations) or other entities that (i) have a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) have a non-financial interest in that subject matter or in a party that could be substantially affected by the outcome of the proceeding.

### B. Defendant's Statement

Uber filed its Certification of Interested Entities or Persons and Corporate Disclosure Statement in the *Colopy* action in its initial appearance on October 18, 2019.  *Colopy* Dkt. 10.  Uber filed its Certificate of Interested Entities or Persons and Corporate Disclosure Statement in the *Verhines* action with its Notice of Removal on March 17, 2020.  *Verhines* Dkt. 3.

Pursuant to Rule 7.1 of the Federal Rules of Civil Procedure, Uber hereby states that Uber is a publicly held corporation and not a subsidiary of any entity.  SB Cayman 2 Ltd., a private company, owns more than ten percent of Uber's outstanding stock.  SB Cayman 2 Ltd. is an affiliate of Softbank Group Corp., a publicly traded corporation.

Pursuant to Civil L.R. 3-15, Uber certifies that the following listed persons, associations of persons, firms, partnerships, corporations (including parent corporations) or other entities (i) have a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) have a non-financial interest in that subject matter or in a party that could be substantially affected by the outcome of the proceeding:  SB Cayman 2 Ltd., Softbank Group Corp.

**20.   PROFESSIONAL CONDUCT**

The parties submit that their attorneys of record have reviewed the Guidelines for Professional Conduct for the Northern District of California.

Dated:  April 30, 2020                                     LICHTEN & LISS-RIORDAN, P.C.


                                                           By:      */s/ Shannon Liss-Riordan*
                                                                       Shannon Liss-Riordan
                                                                       Attorneys for Plaintiffs


Dated:  April 30, 2020                                     GIBSON, DUNN & CRUTCHER LLP


                                                           By:      */s/ Theane Evangelis*
                                                                       Theane Evangelis
                                                                       Attorneys for Defendant
                                                                       UBER, TECHNOLOGIES, INC.

## ECF ATTESTATION

I, Theane Evangelis, hereby attest that concurrence in the filing of this document has been obtained from the above signatories.

Dated:  April 30, 2020                             GIBSON, DUNN & CRUTCHER LLP

                                                   By:    */s/ Theane Evangelis*
                                                          Theane Evangelis